UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACQUINITA RUDLEY,

    Plaintiff,

v.

BANK OF AMERICA HOME LOANS
SERVICING LP (A/K/A BAC HOME LOAN
SERVICING LP) and THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION,

    Defendants.
_____/

File No. 1:11-CV-1374

HON. ROBERT HOLMES BELL

# **O P I N I O N**

Defendants Bank of America N.A. ("BANA"), successor by merger to BAC Home Loans Servicing, L.P.(being sued as Bank of America Home Loans Servicing LP (a/k/a BAC Home Loan Servicing LP)) and the Federal National Mortgage Association ("Fannie Mae") (together, "Defendants"), move for dismissal of the complaint filed against them by Acquinita Rudley. (Dkt. No. 15, Mot.) For the reasons that follow, the motion will be granted.

## I.

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw

all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). A court may not consider matters outside the pleadings in analyzing a complaint under Rule 12(b)(6). However, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). A court is not bound to accept unwarranted "facts" or "inferences" which "contradict documentary evidence appended to, or referenced within, the plaintiff's complaint." *Mulbarger v. Royal Alliance Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001) (citing *Weiner*, 108 F.3d at 89; *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss

under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 ( 2012) (quoting *Iqbal*, 556 U.S. at 677).

**II.**

The following facts are excerpted from Plaintiff's complaint, from the documents attached thereto, and from documents attached to Defendants' motion to dismiss that are referenced in Plaintiff's complaint and are central to her claim.

On May 25, 2005, Plaintiff obtained a mortgage loan from Countywide Home Loans, Inc., in the principal sum of $233,600, and granted Countrywide a mortgage on real property commonly known as 3155 Springbrook Drive NW, Grand Rapids, Michigan. (Compl. ¶¶ 4-5 & Ex. A, Mortgage, Ex. B, Note; Dkt. No. 16, Def. Ex. 1, Note & Def. Ex. 2, Mortgage.) On May 4, 2011, the Mortgage was assigned to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP. (Compl. ¶ 11 & Ex. C.)

The Mortgage provided that the borrower "shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property." (Mortgage ¶ 4.) Plaintiff signed an escrow waiver agreement on May 24, 2005, acknowledging that no escrow account was being established, and that it was her responsibility to make direct payments for taxes and

3

insurance. (Dkt. No. 16, Def. Ex. 4, Escrow Waiver Agrmt.) Under the terms of the Mortgage, if the Borrower's obligation to make escrow payments is waived, and if the Borrower fails to pay escrow items directly, the Lender may make the payments and the Borrower shall be obligated to repay these amounts. (Mortgage ¶ 3.)

On January 20, 2009, Defendant BANA paid city and county taxes totaling $6,264.26 after Plaintiff failed to do so. (Compl. Ex. D, Pmt. Hist. at 8; Def. Ex. 5 Complete Pmt. Hist. at 8.) On June 25, 2009, Plaintiff executed a Tax Advance Repayment Plan ("TARP Agreement"), agreeing to pay the delinquent taxes in equal monthly payments over a 60 month period plus interest. (Compl Ex. K, TARP Agrmt.; Def. Ex. 6, Complete TARP Agrmt.) The TARP agreement also provided that, in accordance with the terms of her mortgage, an escrow account to pay future tax installments had been established on Plaintiff's loan. (*Id.*)

On August 8, 2009, Plaintiff executed a Forbearance Agreement because she was unable to afford her mortgage payments. (Compl. Ex. E, Forbearance Agrmt.; Def. Ex. 7, Forbearance Agrmt.) The Forbearance Agreement allowed her to make a reduced monthly payment of $1,201.27 for six months, from September 1, 2009 to February 1, 2010. (*Id.* at ¶ 2.) It further provided that Plaintiff would "forward to the Servicer [BANA] the amounts required to permit the impound account to contain a sufficient balance so that payments for property taxes and insurance may be timely." (*Id.* at ¶ 2(H).) Plaintiff further agreed that failure "to forward to Servicer sufficient funds so that such payment may be timely made from my impound account shall constitute an event of default." (*Id.*) The Forbearance

4

Agreement was not a forgiveness of payments on the loan or a modification of the loan documents. (*Id.* at ¶ 2(D).) If, upon termination of the Forbearance Agreement, Plaintiff had not entered into another agreement with the Servicer to cure or otherwise resolve her default, the Forbearance Agreement provided that the Servicer would have "all of the rights and remedies provided by the Loan Documents." (*Id.* at ¶ 2(B).) During the forbearance period, Plaintiff made the reduced monthly mortgage payments, but she did not make any additional payments for property taxes and insurance. (Pmt. Hist. p. 10.) Following the forbearance period, Plaintiff did not make mortgage payments for March or April. Due to her reduced payments during the forbearance period and her failure to make payments in March and April, as of May 2010 her account was only current through October 2009. (Pmt. Hist. p. 11.))

From May 2010 forward, Plaintiff began making monthly payments that included escrow amounts. (Pmt. Hist. at 11.) Nevertheless, as of April 21, 2011, Plaintiff had neither made up the deficiency nor found another lender. Plaintiff still owed $216,761.51 on her loan, her mortgage payment was only paid up through July 2010, she had a negative escrow balance of $6,623.79, and there were no unapplied funds. (Pmt. Hist. 13.)

On May 4, 2011, Defendant BANA initiated foreclosure by advertisement proceedings by publishing a foreclosure/housing counselor notice ("3205a Notice"). (Compl. Ex. F, Aff. of Publication.) Plaintiff was also sent a 3205a Notice on May 4, 2011. (Compl. ¶ 59; Dkt.

No. 22, Pl. Resp. Ex. A, Rudley Aff. ¶ 2.)[1]  The notice provided in pertinent part:

> If you request a meeting with the servicer's designate within 14 days after the Notice required under MCL 600.3205a(1) is mailed, then foreclosure proceedings will not start until 90 days after the date the Notice was mailed to you. If you and the servicer's Designate reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if you abide by the terms of the agreement.

(Comp. Ex. F.)

On May 24, 2011, at least 20 days after the housing counselor notice was sent, Plaintiff contacted Home Repair Services, Inc., a HUD-approved housing counselor, to request a meeting. (Compl. ¶ 60.) Home Repair Services requested a meeting with Defendant BANA's designate on May 24, 2011. (Compl. ¶ 61 & Ex. G, Home Repair Serv. Case Hist.)

Defendant BANA proceeded with the foreclose by advertisement and published notices of the foreclosure sale on May 25, 2011, June 1, 2011, June 8, 2011, and June 15, 2011. (Compl. ¶ 65, Ex. H.) On June 22, 2011, Defendant Fannie Mae purchased the property at the foreclosure sale. (Compl. ¶ 72; Def. Ex. 8, Sheriff's Deed.)

On December 20, 2011, Plaintiff filed this action in the Kent County Circuit Court against Defendants BANA and Fannie Mae alleging (1) breach of contract, (2) breach of good faith and fair dealings, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) fraud in the foreclosure by advertisement proceedings,

---

[1] Plaintiff claims the notice was sent on May 4, 2011. Defendants contend they sent the notice on April 28, 2011. (Compl. Ex. G, Page ID#61.) For purposes of this motion the Court will assume that the notice was sent on May 4, 2011.

(6) violation of the Michigan Debt Collection Practices Act, and requesting (7) injunction of foreclosure by advertisement proceedings. On December 20, 2011, the Kent County Circuit Court entered an *ex parte* order tolling the redemption period. (Dkt. No. 1, Page ID#81.) Defendants removed the action to this Court on December 30, 2011, on the basis of diversity of citizenship. (Dkt. No. 1, Notice of Removal.)

## III.

### A. Count I, Breach of Contract

Plaintiff's breach of contract claim is based on her assertion that Defendants misapplied Plaintiff's loan and escrow payments in violation of various contracts between the parties. In support of her breach of contract claim, Plaintiff alleges that she made payments sufficient to bring her loan current, but that Defendants failed to apply the funds on the date they were received, and delayed applying them in order to keep the account delinquent. (Compl. ¶ 83.) Plaintiff alleges that Defendants failed to properly apply Plaintiff's payments according to the covenants contained in the mortgage and miscalculated the escrow requirements in order to keep Plaintiff's account contractually delinquent. (*Id.* at ¶ 85.)

Plaintiff identifies two Mortgage provisions that were allegedly breached. The Mortgage provided that when "any payment or partial payment insufficient to bring the Loan current" is made, the Lender "is not obligated to apply such payments at the time such payments are accepted." (Compl. Ex. A, Mortgage, Uniform Covenants, ¶ 1; Def. Ex. 2.) The Mortgage specified that payments "shall be applied in the following order of priority":

7

> (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3[for escrow]. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

(Mortgage, Uniform Covenants, ¶ 2.)

None of Plaintiff's allegations suggest that Defendants breached either of these provisions. Although Plaintiff has alleged that Defendants failed to apply some payments immediately, she has not alleged that these payments were sufficient to make her loan current. Neither has she alleged that any of her payments was not applied in the correct order of priority. She has not shown how or where her payments were misapplied, or what provision of the contract was breached by the manner in which her payments were applied. Plaintiff has attached to her complaint a copy of Defendant's record of Plaintiff's payment history. The payment history clearly demonstrates that Plaintiff defaulted on her loan obligations. This payment history makes Plaintiff's conclusory assertion that payments were misapplied and that she was current in her payments implausible.

Plaintiff alleges that she made payments according to the TARP agreement, and that Defendants breached the TARP Agreement by failing to properly apply the payments. (Compl. ¶ 87.) Contrary to Plaintiff's assertions, the Payment History clearly shows that Plaintiff did not make payments according to the TARP agreement. She defaulted on her obligations under the TARP agreement when she entered into the Forbearance Agreement and failed to make any escrow payments.

To the extent Plaintiff contends that Defendants breached oral promises made to her, those alleged oral promises cannot be considered by the Court because they are not in writing. The Michigan Statute of Frauds expressly provides that an action shall not be brought against a financial institution to enforce a promise or commitment to waive a provision of a loan or make any other financial accommodation "unless the promise or commitment is in writing and signed." Mich. Comp. Laws § 566.132(2). The language of this statute is unambiguous and operates as an "unqualified and broad ban" of any claim, "no matter its label," against a financial institution to enforce the terms of an oral promise waiving a loan provision. *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000).

The Court concludes that Plaintiff has failed to state a claim for breach of contract against Defendants, and that Defendants are entitled to an order dismissing Count I.

## B. Count II, Breach of Good Faith and Fair Dealings

In Count II, Plaintiff alleges that Defendants breached a duty of good faith and fair dealings. Plaintiff contends that Defendant's mismanagement of Plaintiff's payments and its acceptance of twelve timely payments during the 12-month period immediately preceding the foreclosure demonstrate that defendant has acted in bad faith and in an unfair manner. According to Plaintiff, because she demonstrated her capacity and disposition to make payments on the mortgage, Defendant had a duty to make a reasonable offer to work with her to modify her loan to mitigate its damages.

Defendants move for dismissal of Count II because Michigan does not recognize an

independent cause of action for breach of the implied covenant of good faith and fair dealing. *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003)). Michigan cases will only recognize an implied covenant of good faith and fair dealing "[w]here one party to a contract makes its performance a matter of its own discretion." *Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984) (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975)). Michigan cases do not recognize an implied duty of good faith and fair dealing where, as here, the parties have unmistakably expressed their respective rights in a mortgage, note, and TARP agreement. *See Cheesewright v. Bank of Am., N.A.*, No. 2:11-CV-15631, 2013 WL 639135, at *4-5 (E.D. Mich. Feb. 21, 2013).

The Court concludes that Plaintiff has failed to state a claim for breach of the duty of good faith and fair dealing against Defendants, and that Defendants are entitled to an order dismissing Count II.

**C. Counts III and IV, Negligent and Intentional Infliction of Emotional Distress**

In Counts III and IV, Plaintiff alleges that Defendants are liable for negligent and intentional infliction of emotional distress because they intentionally created the escrow deficiency and gave Plaintiff confusing, misleading, and contradictory information, and caused Plaintiff severe and serious emotional distress. (Compl. ¶¶ 95-114.) Defendants move for dismissal of Counts III and IV because the tort of infliction of emotional distress has not been recognized by the Michigan Supreme Court as existing in Michigan.

To the extent Plaintiff has attempted to allege a claim of negligent infliction of emotional distress, this claim must be dismissed because "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 n.6 (1999) (citing *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993)). Plaintiff has alleged no injury to a third party. Accordingly, she has not stated a claim for negligent infliction of emotional distress.

The tort of intentional infliction of emotional distress has not been recognized by the Michigan Supreme Court. *See Dietz v. Wometco West Mich. TV, Inc.*, 407 N.W.2d 649, 656 (Mich. Ct. App. 1987) (citing *Roberts v. Auto Owners Ins. Co.*, 374 N.W.2d 905, 912 (Mich. 1985)). Nevertheless, Michigan courts operate under the assumption that such a cause of action does exist. In Michigan, a plaintiff alleging intentional infliction of emotional distress must allege "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010) (quoting *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004)). For liability to attach, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Walsh*, 689 N.W.2d at 517); *see also Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 824-25 (6th Cir. 2012). "In Michigan, this standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts

11

with him in various ways and foreclosed on his property." *Lyons v. Trott & Trott*, No. 12–12182, 2012 WL 5301039, at *7, — F. Supp. 2d — (E.D. Mich. Oct. 25, 2012) (quoting *Cingolani v. BAC Home Loans Servicing, L.P.*, No. 11-15159, 2012 WL 3029829, at *6 (E.D. Mich. July 25, 2012)).

Plaintiff's claims that Defendants mismanaged her payments, and defaulted on their oral promises for loan modifications, is not sufficient to state a plausible claim for intentional infliction of emotional distress under Michigan law. *See Lyons*, 2012 WL 5301039, at *7 (holding that an allegation that the defendants continued to utilize false and improper criteria to frustrate and prevent the successful completion of the loan modification was not sufficient to plead a colorable claim for intentional infliction of emotional distress).

Because Plaintiff has failed to state a claim for negligent or intentional infliction of emotional distress against Defendants, Counts III and IV will be dismissed.

**D. Count V, Fraud in the Foreclosure by Advertisement Proceedings**

In Count V Plaintiff alleges fraud in the foreclosure by advertisement proceedings. A claim of fraud must be alleged with particularity. Fed. R. Civ. P. 9(b). In order to meet the "particularity" requirement of Rule 9(b), the plaintiff must allege: "(1) the time, place, and content of the alleged misrepresentation on which he or she relied; (2) the fraudulent scheme; (3) the fraudulent intent of the defendants; and (4) the injury resulting from the fraud." *McLaughlin v. Chase Home Fin. LLC*, 12-1578, 2013 WL 1003465 at *2 (6th Cir. Mar. 14, 2013) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (internal quotation marks omitted)).

The elements of fraudulent misrepresentation under Michigan law are:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (quoting *Candler v. Heigho*, 175 N.W. 141, 143 (1919)); *see also Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 448 (Mich. 2008).

Plaintiff alleges that Defendants knowingly made false statements with the intention of inducing the deputy sheriff to rely on them, that the deputy did rely on them, and that Plaintiff was damaged because her home was sold at a foreclosure sale that did not comply with the statutory mandates. (Compl. ¶¶ 117-120).[2] Plaintiff has not specified what

---

[2] Plaintiff makes the following allegations in support of her claim of fraud:

116. Defendants made misrepresentations of fact in order to foreclose by advertisement and sell the property at the sheriff's sale.

117. Defendants knew that their statements were false but made them anyways with the intention of inducing the deputy sheriff to rely on the statements and sell Plaintiff's property at auction.

118. Defendants knew that the deputy sheriff would rely on the statements that they had complied with the statutory requirements of a foreclosure by advertisement in Michigan.

119. The deputy sheriff relied on the affidavits of publishing and statement of compliance.

120. Plaintiff was damaged because the deputy sheriff's reliance and action

(continued...)

13

representations were made, who made them, when they were made, where they were made, or what aspects of the representations were false. Plaintiff has merely parroted some of the elements of the cause of action without providing factual content.[3] As noted in *Iqbal*, "threadbare recitals of the elements of a cause of action" do not suffice, even for claims that do not have to be pleaded with particularity. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In response to the motion to dismiss, Plaintiff does not attempt to explain how her complaint meets the Rule 9(b) pleading standards. She merely asserts that Defendants engaged in fraud by commencing foreclosure proceedings when she was not delinquent, and by failing to meet with her to discuss a loan modification. Plaintiff has presented an affidavit in support of these assertions.

An affidavit is not an appropriate response to a motion to dismiss because a motion to dismiss is decided on the basis of the pleadings alone. Plaintiff has not requested leave to amend her complaint to incorporate the contents of her affidavit. Even if she had requested leave to amend, amendment would be futile because Plaintiff has not stated a

---

[2](...continued)
because her home was sold at a sheriff's sale following foreclosure by advertisement proceedings which were contrary to law and which did not comply with the statutory mandates of MCL 600.3201 et seq.

(Compl. ¶¶ 116-120.)

[3]Plaintiff has not parroted all of the elements of the cause of action: she has failed to allege that she relied on any misstatements. She only alleges reliance by a third party.

plausible claim of fraud. Plaintiff's affidavit does not add sufficient facts to plead fraud with particularity. The affidavit gives a little insight into the general nature of her fraud claim, but it does not specify the time, place, and content of any alleged misrepresentations with particularity. Moreover, the conclusory assertion in her affidavit that she was not in default at the time of the foreclosure contradicts the payment history that is attached to her complaint. Similarly, the conclusory assertion in her affidavit that she contacted a housing counselor within the statutory fourteen-day[4] period is contradicted by her statement that the § 3205a notice was sent on May 4, 2011, and the allegation in her complaint that she did not contact a housing counselor until May 24, 2011. (Rudley Aff. ¶ 2; Compl. ¶ 60.) There is no dispute that the statutory fourteen-day period commences running on the date the notice is sent. Mich. Comp. Laws § 600.3205a(d) (2010). Plaintiff's own allegations reflect that she contacted a housing counselor twenty days after the notice was sent. Because Plaintiff has not alleged facts to show that she contacted a housing counselor within the statutory time period, she has not alleged sufficient facts to show that Defendants had an obligation to work with her to determine whether she qualified for a loan modification. Mich. Comp. Laws § 600.3205c(1).

Because Plaintiff has not alleged fraud with particularity, and because an amendment

---

[4]The statute in effect in May 2010 provided that "[a] borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan shall contact a housing counselor from the list provided under section 3205a within 14 days after the list is mailed to the borrower." Mich. Comp. Laws § 600.3205b, *amended effective* Dec. 22, 2011.

15

incorporating the statements in her affidavit would still fail to state a plausible claim of fraud, Count V is subject to dismissal.

**E. Count VI, Violation of the Michigan Regulation of Collection Practices Act**

In Count VI Plaintiff alleges a violation of the Michigan Regulation of Collection Practices Act ("RCPA"), Mich. Comp. Laws § 425.251. The RCPA "prohibits abusive collection efforts . . . with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Brady v. Chase Home Fin., LLC*, No. 1:11-CV-838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012) (Quist, J.) (quoting *Levant v. Am. Honda Fin. Corp.*, 356 F.Supp.2d 776, 782 (E.D. Mich. 2005)).

Plaintiff alleges that Defendants violated § 445.252(e) of the RCPA by making "inaccurate, misleading, untrue, or deceptive statements or claims in a communication to collect a debt." (Compl. ¶ 123.) She alleges that Defendants misapplied her payments in order to keep her account delinquent, that Defendants made misleading statements about possible loan modifications, the foreclosure, and her legal rights, and that Defendants failed to abide by the terms of written forbearance agreements. (Compl. ¶ 124.) Plaintiff asserts that because she had brought the mortgage current and because Defendants did not correctly apply the payments, Defendants' communications that she failed to remedy her delinquency were inaccurate and misrepresented her legal rights.

Plaintiff's allegations that Defendants wrongfully applied her payments, made misrepresentations, and violated written agreements, are all conclusory. Plaintiff has not alleged any facts from which the Court can infer that Defendants did anything wrongful. *See*

16

*Brady*, 2012 WL 1900606, at *10 (dismissing RCPA claim for lack of factual detail). Moreover, her assertion that she had brought the mortgage current is contradicted by the very documents upon which she relies. Plaintiff has failed to state a plausible claim under the RCPA. Accordingly, Defendants are entitled to dismissal of Count VI.

**F. Count VII, Injunction of Foreclosure by Advertisement Proceedings**

In Count VII, Plaintiff seeks to have the foreclosure by advertisement proceedings enjoined, and to have the sheriff's sale set aside because Defendants failed to comply with the requirements of the Foreclosure by Advertisement statute, Mich. Comp. Laws § 600.3201 *et seq*. Plaintiff alleges that Defendants commenced foreclosure by advertisement proceedings on May 22, 2011, prior to the expiration of the fourteen-day period, and failed to comply with the statutory requirement that they consider Plaintiff for a loan modification in accordance with Mich. Comp. Laws § 600.3205c(5)(a). (Compl. ¶¶ 128-32.)

Defendants move for dismissal of Count VII because the statutory redemption period has expired. In response, Plaintiff contends that the redemption period has not expired because the state circuit court's *ex parte* order tolling the redemption period is still in effect.

The foreclosure sale was conducted on June 22, 2011. There is no dispute that the redemption period was scheduled to expire on December 22, 2011, six months following the foreclosure sale. *See* Mich. Comp. Laws § 600.3240. On December 20, 2011, the state circuit court entered an *ex parte* order providing that the redemption period for the real property located at 3155 Springbrook Drive Northwest, Grand Rapids "shall be and is hereby tolled [pending] further order of this Court." (Dkt. No. 1, Page ID#80-81, Ex. 3, Ex Parte

Order Tolling Redemption.) When the case was removed to federal court, Plaintiff made no effort to obtain a preliminary injunction, and Defendants made no effort to set aside the TRO. Whether or not the redemption period has expired depends on whether the TRO entered in the state circuit court is still in effect.

Under Michigan court rules, a temporary restraining order granted without notice "expires by its terms within such time after entry, not to exceed 14 days, as the court sets unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." Mich. Ct. Rules 3.310(B). The removal of this case to federal court did not operate to extend the duration of the state court TRO for an indefinite period. The rule is straightforward: "An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439-40 (1974). Rule 65(b) provides that a temporary restraining order "expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b). Because the state temporary restraining order was not extended by order or consent, it expired by its own terms on January 3, 2012, and in no event did it remain in force past January 13, 2012 (14 days after removal).

After the lapse of the statutory redemption period, a court cannot set aside a foreclosure unless the plaintiff-mortgagor has made "a clear showing of fraud, or irregularity." *Conlin v. Mortgage Elec. Registration Sys., Inc*., 714 F.3d 355, 2013 WL 1442263, at *3 (6th Cir. 2013) (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). This is a "high standard." *Id*. The fraud or misconduct must relate to the foreclosure procedure itself. *Id*. Plaintiff acknowledges that it would require a strong case of fraud or irregularity, or some peculiar exigency to warrant setting a foreclosure sale aside. *See Sweet Air Inv. Inc. v. Kennery*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007). She contends that she has met that showing because she was not delinquent at the time Defendants commenced foreclosure proceedings, and Defendants did not comply with the mandates of Mich. Comp. Laws § 600.3201 *et seq*.

Although Plaintiff has shown that she made timely payments during the twelve-month period before Defendant initiated foreclosure proceedings, she has not shown that her account was current. The documentary evidence she has produced shows that her account was delinquent. Moreover, as previously discussed in Section III(D) above, although Plaintiff alleged in a conclusory fashion that she contacted Defendants within the fourteen-day period, the facts she has alleged reflect that she did not contact Defendants until after the statutory period had expired. Plaintiff has not made a clear showing of fraud, and accordingly does not have a viable claim against Defendants for equitable relief in the form of an injunction.

## IV.

The allegations in Plaintiff's complaint, the documents attached to the complaint, and the documents referenced and relied on in Plaintiff's complaint demonstrate that Plaintiff was in default on her mortgage obligations, and that Plaintiff was not timely in her request for a loan modification. Because these documents refute the basic factual premises of Plaintiff's complaint, Plaintiff has failed to state a plausible claim against Defendants. Defendants are accordingly entitled to dismissal of Plaintiff's complaint.

An order and judgment consistent with this opinion will be entered.


Dated: May 31, 2013 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE